RECEIVED
JAN 11 2021
AT 8:30 M
WILLIAM T. WALSH
CLERK

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **RUFUS WILLIAMS** | : | **CIVIL ACTION** |
| **CREAGHAN HARRY** | : | **Complaint for Injunctive, Declaratory,** |
| **Plaintiffs** | : | **Damages & Demand for Jury Trial** |
| | : | **And Upgrade to Class Action on behalf of all** |
| | : | **Federal Detainees at Essex County Correction** |
| | : | **Facility and further for all pretrial detainees in** |
| | : | **Federal Custody in the State of New Jersey** |
| | : | |
| **V.** | : | |
| **UNITED STATES OF AMERICA** | : | **42 U.S.C. § 1981, 1982, 1983, 1985, 1986, 1999, Bivens,** |
| **Defendant** | : | **28 U.S.C. § 1367 / N.J.S.A. 10:6-1, 2A:43-2, 56:8-1 to 20,** |
| | : | **N.J.A.C. 13:45A-26C.2, 18 U.S.C. § 420a-e, 18 U.S.C. §** |
| | : | **1951, 19 U.S.C. § 1964(c), 42 U.S.C. § 2000a, 20000b-2,** |
| | : | **U.S. Constitutional Amendments 1st, 5th, 6th, 8th, 9th,** |
| | : | **13th, 14 & 15th, Torts under the laws of the State of** |
| | : | **New Jersey** |

**JURISDICTION**

Jurisdiction is asserted pursuant to 42 U.S.C. § 1981, 1982, 1983, 1985 1986, 1988, 18 U.S.C.S § 1964 (c), Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) , 42 U.S.C. , § 2000a & 2000b-2, Conspiracy 18 U.S.C.A. § 371, Seditious Conspiracy 18 U.S.C.A. § 2384 and the United States Constitution Article I, Section 9 "The Privileges of the Writ of Habeas Corpus shall not be suspended, unless when in cases of Rebellion or Invasion the public safety may require it" "No Bill of Attainder or ex post facto Law shall be passed". Amendment I [1791], "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof….and to petition the Government for a redress of grievances". Amendment V [1791], "….nor be deprived of life, liberty, or property, without due process of law…." Amendment VI [1791], "….the accused shall enjoy the right to a speedy and public trial, by an impartial jury of

the state and district wherein the crime shall have been committed…." Amendment VIII [1791], "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted". Amendment IX [1791], "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people". Amendment X [1791], "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people". Amendment XIII [1865], Sections 1. & 2. Section 1. "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, nor any place subject to their jurisdiction". Section 2. Congress shall have power to enforce this article by appropriate legislation". Amendment XIV [1868], Section 1. "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property; without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws". & Amendment XV [1870], Section 1. & 2. Section 1. "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude." Section 2. "The Congress shall have power to enforce this article by appropriate legislation". Under 28U.S.C. § 1331, The District Court has original jurisdiction as per these claims. 18 U.S.C§ 420 a-e, 18 U.S.C.A §§ 1961-1968, 18 U.S.C § 1951, 18 U.S.C.S. § 1962 (a) provides the District Court original jurisdiction as per RICO claims under 18 U.S.C.S. § 1964 (c).

Jurisdiction for the State Law Claims under N.J.S.A. 10: 6-1, 2a: 43-2, 56: 8-1 to -20, N.J.A.C. 13:45A-26C.2, Torts under the laws of the state of New Jersey, a. Unconstitutional imprisonment, b. Abuse of process, c. Negligence, and d. Gross negligence, is pursuant to 28 U.S.C. § 1367, which grants Federal District Court supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that form part of the same case or controversy under Article I and Article III of The United States Constitution.

**CONFINED STATUS OF PLAINTIFF [S] & PRIOR FEDERAL CIVIL ACTIONS OR APPEALS**

Like many other Americans, the plaintiffs, Mr. Williams and Mr. Harry are presently incarcerated due to the unconstitutional practices that are currently being administered upon "all" Federal Detainees within the jurisdiction of the United States of America. Said arbitrarily, unlegislated unconstitutional standing order[s] represent a slippery slope, wherein they are indeed poised to shape public policies, as the same stand in direct

contrast to the United States Constitution while simultaneously, purposefully and disproportionately subject "all" Federal "PRETRIAL" Detainees, a large portion of the incarcerated population to known and willful violations of The United States Constitution. As The Plaintiff [s] Mr. Williams #207585661 and Mr. Harry #201907183, are currently "Federal Pretrial Detainees presently in the custody of The United States Marshal, being unlawfully warehoused under profitable contract ultimately for the Prison Industrial Complex, at the Essex County Corrections Facility 354 Doremus Ave. Newark, New Jersey, 07105.

**INDIGENT AND REQUESTS THE COURT TO APPOINT COUNSEL TO REPRESENT PLAINTIFFS IN THIS CIVIL SUIT.**

Plaintiff[s] are requesting they be allowed to proceed in forma pauperis. Plaintiff[s] are currently incarcerated as Pretrial Detainees and cannot afford to secure private counsel, as both are indigent. Plaintiff[s] do not have any formal legal education, therefore require a trained, licensed civil attorney to assist them in this civil action to assert their rights, (mentioned in jurisdiction) to insure that said rights are protected and to seek redress for rights violations. As an incarcerated person, plaintiff[s] do not have a proper work environment that would enable Plaintiff[s] to manage a lawsuit independently. For these reasons, and good cause being shown, plaintiff[s] requests the court appoint counsel to represent the interest brought forth in this complaint/civil action.

**PREVIOUS CIVIL ACTION**

Plaintiff, Mr. Rufus A. Williams Jr. has filed a civil action suit in a Federal Court while incarcerated, being **case #: 1:20-cv-01114-RBK-JS, Camden, New Jersey 08101-2797. Pending.**

Mr. Harry has not filed any Federal suit in any United States Court.

**PARTIES**

**PLAINTIFF RUFUS A. WILLIAMS JR.,** is a brown citizen of the United States of America and the State of New Jersey, residing in Burlington County, New Jersey. Mr. Williams is descended from persons kidnapped and smuggled "against their will" to the United States, where his ancestors were enslaved and subjected to slavery and every other extreme variation of inhumane torture and human rights violations (to include everything from sexual assault by their captors, to grievous bias that were protected/furthered and supported by

the very same Federal Government that's being called into question.) Societal discrimination and institutional discrimination that continues to this day, particularly in the area of policing and the legal system in the United States, where poor brown men like the plaintiff are still routinely abused, unlawfully arrested, prosecuted, convicted and murdered by those acting under color of law, with de facto impunity. The United States of America is infamous across the world for its abuse of and genocidal policies toward those descended from slaves. Unfortunate brown men in the United States have been forced to live in crippling fear of extrajudicial executions/prosecutions by state-sponsored terrorists employed by law enforcement agencies. Extrajudicial/prosecution of poor brown men by state and federal actors-heavily militarized police unjustly utilizing firearms against unarmed civilian brown men – in the United States has become and has been accepted as the modern day lynching. Now that brown persons are supposed to be able to legally have the right to vote, the U.S. States Government have continued to unconstitutionally allow certain states to prohibit large amounts of the black and brown citizenry from voting by creating a bias driven political system of whom legislated laws that ultimately targeted the black and brown communities thereby giving birth to the prison industrial complex by disproportionately deeming said citizens as "felons" (failures) who under most state laws have their voting rights revoked on an often permanent, but sometime temporary basis. Prior to the ratification of the fourteenth Amendment, members of the plaintiff's racial group were not even considered human, let alone United States Citizens, due to their race.

"As a society we acknowledge and bewail our deeply troubled racially bigoted, ethnicity biased and or culturally ignorant one-sided history – the horrors of slavery, the unjust treatment of persons, by the federal and State Government and the allowing and acceptance of Jim-Crow, the tawdry (and frequently violent) acts perpetrated by the same. The subtle (and not so subtle) resistance to conferring genuine equal rights and equal opportunities upon all Americans." (Cotter v. City of Boston, 2002 U.S. Dist. Mass., LEXIS 4922) (D.MASS. March, 21 2002)

Although slavery is technically illegal nowadays, de facto slavery continues to exist and is protected by The United States Constitution, Amendment XIII and is supported under the guise of prison labor. Mr. Williams is currently incarcerated at The Essex County Corrections Institution, he has not been convicted of any crime, where despite his Pretrial Status and presumption of innocence, he is unlawfully, illegally and unconstitutionally be held against his will and being denied his constitutional right to bail and to his right to speedy trial. Thereby subjecting Mr. Williams to unlawfully forced slavery, to-which if he resist, he will be place in 24 hour a-day lock-in, notwithstanding, jail is the new plantation for-profit; "corrections" is the new

cotton, which seems to illustrate corrections to how to present slavery to be accepted. Clearly, change has occurred in name only, while practices have indeed remained the same.

While born in the State of New Jersey, (Trenton) county of Mercer, to Mr. & Mrs. Williams being one of three children, Rufus being the middle child, having an elder sister and a younger brother. Plaintiff spent his youth in the southeastern portion of the country, in the state of Georgia, where he was subjected to hardcore racial discrimination on several fronts as a matter of public policy towards black and brown residents. Mr. Williams was attacked by a white male, at the time he was thirteen 13 years of age and the case went before a judge wherein the white boy admitted to assaulting Mr. Williams on three 3 occasions during a forty-five 45 minute period. Mr. Williams decided to stop the attack by defending himself and the white boy was hurt. In short, the white mother cried in court and Mr. Williams at the age of thirteen 13 was sentenced to ten 10 years commitment to the State of Georgia, (this is all public record.) Federal Law Enforcement Agencies, such as the Federal Bureau of Investigations (FBI), through deliberate and particularly targeted malicious actions, have sought to destroy efforts to gain racial equality and freedom for black and brown persons in the United States, as has been documented in programs such as COINTELPRO, where the FBI was tasked with infiltrating, discrediting and incarcerating via false allegations, individuals and organizations seeking racial equality and freedom for the black and brown community via lawful first amendment protected activities.

"From the late 1960s into the early 1970s, the FBI conducted the COINTELPRO program, in-which Plaintiff contends that the FBI unlawfully surveyed, infiltrated and disrupted civil rights anti-war, and other American dissident political movements. Numerous well known individuals, such as Reverend, Dr. Martin Luther King Jr. and Mohammed Ali (Casious Clay) were affected by the Government's activities. The COINTELPRO Program was officially closed down in the early 1970s. According to the Plaintiff, the FBI continued aggressive investigation of (253 F. Supp. 3d. 273) the same or similar sorts of political dissent groups including aggressive national security oriented investigations of individuals, organizations and elected political officials who sought to achieve racial justice. Hardy Decl. Ex. G at 31." (Seavey v. DOJ, 2017 U.S. Dist. LEXIS 113028 (D.D.C., July 20, 2017) In very much the same way, the Plaintiff is being subjected to the very same actions perpetrated by the very same FBI seemingly following the very same playbook/operating procedures, being the violation of due process of law.

**PLAINTIFF CREAGHAN A. HARRY**, is a citizen of the United States of America, classified as a "person of color." He attended Elementary, Middle and High School in Marlboro, NJ, where his parents still reside. Mr.

Harry attended college at University of Rochester, in Rochester, NY, before returning to live in Red Bank and Sea Bright, NJ. He later moved to Boca Raton, Florida, where he still resides. He owned his home which he purchased in 2001, until he was recently charged, at which time he had no way to further pay his bills due to an asset freeze of his accounts and was forced to turn the house over to the mortgage company. He is the founder of over half a dozen companies that have employed thousands of people in the last few decades and holds United States Patents. He is a member of several local business community groups. He is the father of 4 boys, ages 6 -21 years of age, who he has not seen since April 2019.

He was a volunteer at many community charitable organizations, including Overtown Youth Center, Propel College Youth Charity, Covenant House and Children of the Sun Orphanage and was a member and active participant in his local church. He was also a volunteer little league and baseball coach for the greater part of this past decade. He has a brother who is an honorably discharged veteran who served in the 101st Airborne and parents who were senior accountants with major corporations along with the IRS in the New York City's Wall Street and New Jersey area before retiring.

Mr. Harry is a pretrial detainee with no prior crimes or charges against him in his life. He was incarcerated on April 9, 2020 related to Anti-kickback Statute stemming from a customer that signed up with his company in or around 2016. Mr. Harry has vehemently maintained his innocence of the charges lodged against him and awaits trial to exonerate him and clear his name. Mr. Harry has extensive claims of prosecutorial misconduct, obstruction of justice and witness tampering that he is preparing to file against the prosecutor, U.S. Attorney Jacob Foster, for knowingly lying to the court to influence the court to deny Mr. Harry's bail and create excessive bail conditions along with other egregious acts. Prior to Fosters cunning, lies and deceit to the court, Mr. Harry was approved by pretrial services in West Palm Beach, Florida for a signature bail based on his own recognizance. Mr. Harry has had 3 bails granted, but has not been able to meet the conditions and therefore is still remanded.

Mr. Harry has been locked up in Maximum Security conditions, under severe deprivation of his constitutional rights, as detailed in this document. Mr. Harry has not been able to receive a Speedy Trial, nor has he had the ability to prepare for trial, nor has he even been able to access Discovery, as he approaches the 2 year mark of his incarceration. His access to his attorneys have been limited to short text messages and 15 minute video conferences whenever a slot opens up within the jail, which is about once or twice a month. Mr. Harry is definitively an aggrieved party.

**INFORMAL OR FORMAL RELIEF SOUGHT FROM APPROPRIATE ADMINISTRATIVE OFFICIALS**

Plaintiff[s] have written letters to institutional staff, i.e. Sergeants, lieutenants and Wardens of both the Monmouth County Correctional Institution and the Essex County Correctional Facility and in the responses from both, the plaintiff[s] were notified that the current situation is not within their control.

**STATEMENT OF CLAIM**

(Names unknown) The United States Federal Government's incarceration apparatus has instituted a **Standing Order** that is in direct violation of the Rights and Immunities that are provided, guaranteed, and supported by The United States of America's Constitution and the United States Bill of Rights. The violations are presently being supported, rather than the laws. This is clearly recognizable when one looks at the provision/act/law currently being instituted and enforced, referred to as **"Ends of Justice."** This "Standing Order" subjects Pretrial Detainees to severe cruel and unusual punishment while not being convicted or found guilty of any felony, first by the canceling of court dates, thereby imprisoning American citizens indefinitely, individuals of whom should not be subject to such treatment, as they are not accused of being domestic terrorist and therefore are not being prosecuted under the Patriot Act. The Federal Government has side stepped laws put into place for time allotted to indict, along with laws that are on the books requiring that the Federal Government have any American Citizen that has been formally charged with a felony, brought to trial within its allotted amount of time. Also foregoing, eliminating, or canceling American Citizen's Right to a speedy trial, thereby violating Article 1. Section 9. Writ of habeas corpus by forcing individuals to be, subjected to any court proceedings that do take place, to agreeing to have the proceeding unconstitutionally move forward via Skype over unsecure internet web sites or unlawfully suffer waiting in jail, prison or confinement until their status is reverted back to the usual, Constitutionally sound and supported operating procedure. This time-space, as of yet, has absolutely no set date, although at one point there had been a target time set into place to cancel this "UNCONSTITUTIONAL" ENDS OF JUSTICE implementation, which was ultimately withdrawn. This type of disorganization among the Federal Conviction Machine is absolutely being employed and being used as a means to have Federal Pretrial Detainees accept plea deals under duress, undue influence, intimidation, coercion and unfair persuasion by prosecutor [s] of whom conduct themselves in unlawful, immoral and unethical manners, illustrating clear prosecutorial misconduct and manipulation of the current instituted unconstitutional Standing Order by way of misusing the CV-19's unconstitutional Ends of Justice implementation to achieve unlawful objectives. This Standing Order also subjects Pretrial Detainees to suffer the same punishment that of individuals of whom have been duly convicted and or sentenced in a Court of Law. By first arbitrarily

subjecting the same to the very treatment as the previously mentioned, including everything from phone time to exercise time even up and to include all rights and privileges. This provision/Law has indeed completely altered, revamped, destroyed or single handedly rewritten the operating procedures of every United States Correctional Institution in America and without congress nor proper legislation as is required by law. Federal Pretrial Detainees are subjected to 23 hours and 45 minutes a day LOCK-DOWN [BEING CONFINED WITHIN A CLOSET SIZED ROOM] and being forced to decide whether to take care of personal hygiene or to contact family and loved-ones in the 15 minutes allowed out of the cell, (closet sized room).

If an American citizen were found to be guilty of this very same form of torture to an animal, the individual would indeed be convicted and sentenced to prison time, under the auspices of animal cruelty. This represents a complete violation of fundamental rights, a significant component of the liberty guaranteed to "all" American Citizens by The American Constitution while not convicted of any felony [s], therefore this encroachment must be rigorously scrutinized by the court to ascertain the soundness of any or "all" purported government/judicial justification [s] in support of its (ENDS of JUSTICE) implementation upon every Federal Pretrial Detainee and housing facility within the jurisdiction of the United States of America and upon its citizens. Pretrial Detainees have also been subjected to the cancelation of "all" visitation by family and friends, both contact and non-contact, which by and large causes extreme mental stress, thereby putting each and every Pretrial Detainee's Mental Health at unjustified or unjustifiable risk by totally eviscerating the moral support system. This unduly creates absolute despair, (torture) through the immoral forcing of loneliness, of which has been proven to break a persons will to live, thereby making said person prime candidates for suicide, (citing, Monmouth County Jail, H-2 April 2020, suicide by hanging.) The plaintiffs/ "all" Federal Pretrial Detainees have been (since March 2020) and are currently being denied the right to religious and spiritual guidance and support provided by Imam, Rabbi or Clergy due to the cancelation of visits by the same. While simultaneously witnessing the allowing of commissary provider's employees, entry/access to correctional facilities in order to continue commerce which benefits the Institution, its shareholders, stockholders and or all of whom are privy to the profit-sharing that is maintained by the uninterrupted flow of currency generated by the sale of goods to inmates that are being UNCONSTITUTIONALLY tortured. This creates within a large portion of the inmate population or Pretrial Detainees an unrecognized desire to consume more (through the feeling of loneliness/abandonment) resulting in a much larger profit margin for the institution and its investors, thereby supporting further the extraordinarily profitable Prison Industrial Complex. As we are "all" American Citizens, we understand that capitalism is a cornerstone of our culture intricately woven into the fabric of society that makes-up our republic/democracy and therefore in-and-of-it-self, is not an issue. Whereas, this is surely an issue wherein torture is the component that drives up the exponential profit. Pretrial Detainees/Plaintiff [s] and "all" Federal Pretrial Detainees as of March, 2020 have been and are currently being denied (physical) contact with "all"

attorneys of record, being forced to partake in video calls wherein said individual are encouraged to openly discuss the mechanics of their case[s] and or strategies thereof, "as it relates to their defense" over proven to be unsecure sites. Attorneys themselves advise (through U.S.P.S mail), "letters" to their clients that the sites that are being provided are not at all secure and therefore should not be utilized to discuss Defense Strategies. This results in extreme delays in communication[s] and in regards to issues that are time sensitive, this poses a detrimental problem to the forming of an adequate defense. Adding in the fact that the (U.S.P.S.) is experiencing delays outside of its control, thereby resulting in letters from lawyers and the court being delivered anywhere from seven (7) days late as far as up to fourteen (14) days late. This alone, is of grave concern, this practice calls into question the long standing Attorney-Client privilege, of which has stood, been recognized, respected and held in high regard since its inception. Federal Pretrial Detainees are also terribly limited in the amount of time that they/we are allotted regarding legal research, because of restrictions being enforced due to the rules that have been instituted as a result of Ends of Justice being implemented/thrust upon Essex County Correctional Institution, Monmouth County Correctional Institution as well as every other county jail, prison, holding facility and or any other institution that warehouses Federal inmates and Pretrial Detainees. The aforementioned clearly illustrates the clear DEPRIVATION OF RIGHTS and a clear and convincing view of the deviation from the normal everyday operating procedures of all Federal Housing complexes, institutions and or facilities, these violations lawfully require adequate remedy and constitutionally sound redress. Rights appear to be whatever the "OLIGARCHS" say they are and could be given and taken away at a moments or without notice and as stated by Benjamin Franklin: "Those who would trade a little Liberty for a little security deserve neither and would lose both." Therefore it is for the fore stated causes that We The People stand in solidarity with our Rights that are provided by The Constitution of The United States demanding that the same be protected and preserved.

**COUNT 1: VIOLATIONS OF 42 U.S.C. 1983; Amendments, V, VI, VIII, XIII and XIV**

Plaintiff incorporates by reference statement of claim and all counts within this complaint, as if fully set forth here.

Defendant[s], United States Federal Government have violated and are currently violating the Constitutional Rights of Mr. Rufus A. Williams Jr., Mr. Creaghan A. Harry and every Federal Pretrial Detainee, mainly Amendment, V, VI, VIII and XIV. Defendant[s] (conspiring) to set forth and force the implementation of the Standing Order (ENDS of JUSTICE) without Congress nor legislation violates rights and immunities guaranteed, provided and protected by the United States Constitution to "all" American Citizens.

Amendment V mandates that no person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without Due Process of Law. Notwithstanding, The "Ends of Justice" implementation affords the government latitude to apply pressure in the form of undue influence, unfair persuasion and intimidation using the current incarceration status as the weapon and vise. This continuance is a clear violation of one's rights to life and liberty. The aforementioned violates Amendment VI by dissolving all Federal Pretrial Detainees constitutionally guaranteed and provided rights by the cancellation of court dates and indefinite detention. This has been or is being done by the forced implantation of said act, provision, law, i.e. "Standing Order" has caused and is currently causing "all" Federal Pretrial Detainees to be subjected to "EXTREME" cruel and unusual punishment, THEREBY VIOLATING Amendment VIII. This therefore has caused and is currently causing the domino effect violation of the Plaintiff's XIII Amendment Section (1.) Right, being subjected to slavery and or servitude whereof the parties have not been convicted. This also causes the violation of Amendment XIV, Due Process and Equal Protection of the Law.

**COUNT 2: VIOLATIONS OF 42 U.S.C. 1985, 1986, 1988; Amendments I, IX and XV**

Plaintiff incorporates by reference statement of claim and all counts within this complaint, as if fully set forth here.

Amendment I mandates that Congress "shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof … and to petition the government for a redress of grievances" The rights of the defendants are being violated via the forced implementation of the Ends of Justice Standing Order in the restriction of access to clergy and thereby the ability to practice and exercise their religious freedoms. Amendment IX mandates that the enumeration of the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people. The Ends of Justice Standing Order denies the plaintiffs and all federal detainees of their enumerated Constitutional rights. Amendment XV mandates the right of citizens to vote and this right has been unlawfully suspended through the continued incarceration of pretrial detainees throughout the November 2020 election cycle, whereby no access was provided to detainees to exercise their right to vote. Additionally, without the freedom that is demanded by the Speedy Trial Act, pretrial detainees who were incarcerated in August 2020 or prior would have been free or had their right to trial within 70 days and would have been free to vote at will in November 2020.

**RELIEF**

Plaintiff incorporates by reference above (STATEMENT of CLAIM) and all Jurisdictional rights of this complaint, as if fully set forth here.

As a result of all acts, conduct, forced enforcement of violations of federally protected constitutionally provided Civil Rights and immunities and omissions committed under the color of state law in the form of customs, policies, act[s], provisions, "STANDING ORDER", public health emergency and practices, failure to train, audit, supervise, and discipline, and intentional acts maliciously, intentionally and willfully committed against Plaintiff[s] person[s]. Plaintiff[s] have and are suffering harm[s] and injuries including but not limited to humiliation, pain, mental cruelty, economic loss, loss of liberty, and unlawful violations of their constitutional rights.

On all counts and claims for Relief, Plaintiff[s] demands judgment in their favor and declaratory relief in the form of a declaration that the actions and conduct of all the Defendant[s] both named and unnamed was/were and is currently in violation of 42 U.S.C. 1983, 1983 1985, 1986, & 1988 as well as Amendments I, V, VI, VIII, IX, XIII, XIV & XV of the United States Constitution and injunctive relief ordering all Defendants to cease their unlawful conduct.

An award of punitive damages and exemplary damages to Plaintiff[s] in an amount of not less than $600,000,000.00 (six hundred million dollars) as sufficient to punish the Defendant[s] against whom these damages are awarded and sufficient to deter similar conduct in the future by said Defendant[s] and to make **every** Federal Pretrial Detainee whole, in seeing that true justice is served.

Further, On all Counts and Claims for Relief, Plaintiff[s] demands judgment of four [4] days for every one [1] day served during the unlawful and unconstitutional pretrial detention during the period of March 15, 2020 to present for Plaintiff[s] and all Federal pretrial detainees in custody of the U.S. Marshalls in County, State or Federal facilities.

On all Counts and Claims for Relief, Plaintiff[s] demand judgment in their favor and to award punitive damages, against each Defendant according to the findings of the jury, due to the malicious, oppressive, outrageous, unconstitutional and unjustifiable actions and conduct of all Defendants.

On all Counts and Claims for Relief, Plaintiff demands judgment in their favor and reasonable attorney fees and interest pursuant to 28 U.S.C. 1920, 28 U.S.C. 1961, and 42 U.S.C. 1988 et seq.

On all Counts and Claims for Relief, Plaintiff[s] demand judgment in their favor and any other relief the Court may deem appropriate and just, and otherwise in the interest of justice.

**DEMAND FOR JURY TRIAL**

On all facts, Counts and Claims asserted, Plaintiff[s] demand a trial by jury as is their United States Constitutional Right, guaranteed by Amendment VII of the United States Constitution.

**PRAYER**

Plaintiff incorporates by reference statement of claim and all counts within this complaint, as if fully set forth here.

A. Declaratory judgment that the acts of the defendants, and their agents and employees, violated plaintiffs due process; 42 U.S.C. § 1981, 1982, 1983, 1985, 1986, 1988, 28 U.S.C. 1367, 18 U.S.C.S § 1964(c), Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) , 42 U.S.C. , § 2000a & 2000b-2, Conspiracy 18 U.S.C.A. § 371, Seditious Conspiracy 18 U.S.C.A. § 2384, U.S. Constitution 1st, 5th, 6th, 8th, 9th, 13th 14th, & 15th Amendments, Torts under the laws of the State of New Jersey and the United States of America. , a. Unconstitutional imprisonment, b. Abuse of process, c. Negligence, d. Gross negligence and e. Malicious Prosecution.

**CERTIFICATION OF PLAINTIFF 1**

I, Rufus A. Williams Jr., Plaintiff 1, certify under penalty of perjury, that I am personally familiar with all facts, allegations and statements made within this complaint based on personal knowledge. I certify that all facts, allegations and statements made are true and correct to the best of my knowledge. I understand there are penalties for knowingly providing false statements and or claims.

SIGNED: ______________________ DATE: 12-30-20

Rufus A. Williams Jr.

**CERTIFICATION OF PLAINTIFF 2**

I, Creaghan A. Harry, Plaintiff 2, certify under penalty of perjury, that I am personally familiar with all facts, allegations and statements made within this complaint based on personal knowledge. I certify that all facts, allegations and statements made are true and correct to the best of my knowledge. I understand there are penalties for knowingly providing false statements and or claims.

SIGNED: ______________________ DATE: 12/30/20

Creaghan A. Harry

## LEGAL ARGUEMENT

### Visitation

"Visitation can be a stressful and frustrating experience not only for the inmate but for his or her family and friends."..."visitation helps everyone involved with the inmate. Visitation can boost the morale of your loved ones and make his or her adjustment to his incarceration and reentry more bearable. Visits can also keep your relationship with your loved ones more stable. ECCF staff wants your visitors to have a pleasant visit." (Page 31, ECCF Inmate Handbook.)

"If any inmate is found in possession of or using contraband either during or following a visit, it will be assumed that the contraband was introduced by the inmates most recent visitor and the contraband will constitute reasonable suspicion for terminating the visit privileges of the visitor. Reasons visiting privileges may be denied, revoked or terminated...inmate refuses the visit, the visitor appears to be under the influence of intoxicants or displays unruly behavior, an inmate fails to comply with the clothing requirements, visitor fails to produce valid identification..." (ECCF Inmate Handbook, page 34)

"Twenty Fifth Amended Declaration of Alfaro Ortiz" dated Nov. 9 2020 – "As of March 22, 2020, ECCF disallowed visitation for all family and friends of ECCF inmates and detainees" (page 7, Item d.)

The Plaintiff claims that the federal Government has violated their Constitutional Rights by first unconstitutionally forcing E.C.C.F. and all other Federal and State Institutions to indefinitely suspend the normal day-to-day operating procedures of the same, by imposing unlegislated act[s]/provision[s] and or law[s]. This is being done while not being in line with The United States Constitution and the implementation of said act[s]/provision[s]/ and or law[s] has caused E.C.C.F. to unjustly alter the modus-operandi of the institution, as of March 22, 2020 (mentioned above) thereby making the Defendant responsible for the unjust cruel and unusual punishment being inflicted on all Federal Pretrial Detainees. The Federal Government has also unconstitutionally forced E.C.C.F. to deviate from the rules set forth in the inmate hand book used to govern the facility, which in fact does not at all express any type of reasoning for deviations from rights or privileges outside of disciplinary reasons.

**Attorney Visits**

"Legal representatives may visit inmates from 07:00hrs -19:00 hours seven days a week."..."If you have made an appointment to meet with an attorney or legal representative it is your responsibility to cancel the appointment if you do not intend to keep it. ." (Page 34, ECCF Inmate Handbook.)

"Twenty Fifth Amended Declaration of Alfaro Ortiz" dated Nov. 9 2020 — "Transitioned all attorney and contact visits to window visits only and expanded the window visit schedule. All detainees and inmates were separated from visits by a glass partition." (page 6, Item n.) "ECCF facilitates confidential telephone calls between detainees and inmates and their attorneys. Every housing area has a set of tablets that inmates and detainees can sue to make telephone calls. Attorneys may contact the Inmate/Detainee Advocate to arrange for a telephone call with their client. The inmate or detainee can use headphones while speaking with their attorney." (page 8, Item g.) "On or about April 1, 2020, ECCF opened a dedicated room within the visitor's lobby wired to support video conferencing capability between inmates and detainees and their attorneys at the facility." (page 8, Item j.) "From the POD, inmates and detainees can make non-confidential calls to attorneys for 15 minutes. Advocates can initiate calls to inmates or detainees on a confidential line for up to 99 minutes." (page 9, item k.)

The Plaintiff claims that the Defendant has and currently is violating Constitutional Rights by the unconstitutional implementation of ENDS of JUSTICE upon Federal Pretrial Detainees of whom are at this time being warehoused in Federal holding Facilities around the country. As stated in the United States Constitution "...citizen [s] have a right to council...." And this right has been suspended as mentioned above, and there seems to be absolutely NO! Regard for Attorney / Client confidentiality when one scrutinizes the fact that within the Twenty Fifth Amended Declaration of Alfaro Ortiz" dated Nov. 9 2020 it clearly states as fact that, "ECCF facilitates confidential telephone calls between detainees and inmates and their attorneys."

**Religious Services** (Page 36, ECCF Inmate Handbook.)

1. "Inmates may identify their religious affiliation during the intake process. The view of agnostics and atheists shall be respected."
2. "Pre-registration for attendance at religious services may be enforced it is determined necessary for the safe and secure operation of the facility."
3. "Pastoral care service providers from all major faith traditions are available for religious and spiritual consultation or counseling. Inmates may submit requests for such services to a housing pod officer,

ombudsperson, or social worker. Inmates may add their religious or spiritual leader to their lists of visitors."

4. "A schedule of religious services is posted in the housing pods and available from a social worker or ombudsperson. Attendance at religious services is voluntary."
5. "Inmates are permitted to purchase for delivery by mail spiritual and religious material."
6. "The granting or denial of privileges, or discrimination or punishment on basis of religious or spiritual beliefs is expressly forbidden."
7. "All religious and spiritual groups shall have equal access to facilities and privileges based on security concerns and number of participants."
8. "Religious and spiritual services are provided on a rotating schedule. Services shall only be provided for those inmates who are out for recreation activity in his/her respective housing area."

"Twenty Fifth Amended Declaration of Alfaro Ortiz" dated Nov. 9 2020 – (page 6, Item 1.) – "Suspended all religious services conducted by outside volunteers;"

The Plaintiff claims that the Defendant has/is violating not only the Plaintiff's Constitutional Rights but the Constitutional Rights of "all" Federal Pretrial Detainees across the fruited plain. This claim is supported by the statement on page 6, Item 1 (above) of the Twenty Fifth Amended Declaration of Alfaro Ortiz" dated Nov. 9 2020, which is unusual due to the normal operating procedure explained on Page 36, ECCF Inmate Handbook (1-8 as shown above) clearly illustrates the procedure concerning all religious concerns and at no point does it state that religious services can be indefinitely suspended due to unconstitutionally forced act[s] / provision[s] and or law[s]. The Defendant has unlawfully forced E.C.C.F. and "all" other Federal holding facilities to violate the Constitutional Rights of "all" Federal Pretrial Detainees by unilaterally causing the unlawful deprivation of the aforementioned Constitutional Rights.

# CERTIFIED CIVIL RIGHTS COMPLAINT

Essex County Correctional Facility ('ECCF'), Monmouth County Correction Facility and other state, county and Federal pretrial detainee jails have been under severe lockdown quarantine since March 2020. These procedures have created clear violations of aforementioned statutes and Constitutional Amendments listed in the complaint.

On November 25, 2020, the Supreme Court ruled in a landmark decision that "even in a Pandemic, the Constitution cannot be put away and forgotten" and that "even if The Constitution has taken a holiday during the pandemic, it cannot become a sabbatical." ***Roman Catholic Diocese of Brooklyn v. Cuomo***, 2020 US

LEXIS 5708 and ***Agudath Israel of America et al. v. Cuomo*** No. 20A90. The ruling now requires that an executive order based on a Pandemic cannot remove or reduce a constitutional right.

These conditions at ECCF include: **(1) 20 to 23 ½ hours of daily isolation/lockup in a small closet sized room, (2) extremely limited access to legal counsel, (3) no family visits either contact or no contact to support family stability and thereby mental health, (4) no access to clergy or religious services, (5) extremely limited access to medical care, and (6) Suspension of 6th Amendment Speedy Trial Act Rights.**

Federal Judges have historically granted jail credits for excessively harsh jail conditions and constitutional violations suffered. Since March 2020, detainees in state custody in New Jersey and nationwide have had laws and executive orders passed requiring the addition of jail credits for being detained under these conditions with as much as 4x credits. No such laws or mandates have been passed for a federal inmate suffering under the exact same conditions and even residing in the exact same facilities.

For example, New Jersey pretrial detainees with state charges, under NJ S2519 have been offered relief by adding credits to their time served, based on the number of months that they have been incarcerated. NJ S2519 provides up to **4x time served credits** towards their sentences. As there has been no such similar considerations for federal detainees, this creates a 3553 sentence disparity, as people who have virtually the same circumstances are receiving drastically different sentences.

Third Circuit law, see *United States v. Cooper*, 437 F.3d 324 (3d Cir. 2006) and *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006), requires that attention must be paid to individuals who have suffered significantly after judicial officers remanded them to federal custody to await disposition of their cases. Downward variances have been consistently granted for even lesser extreme conditions than detainees are currently suffering, including reduction of sentences and double time jail credits. See: *United States v. Ortiz*, 2007 U.S. Dist. LEXIS 87055 (3rd Dist., 2007), *United States v. Sutton*, 2007 U.S. Dist. LEXIS 79518 (3rd Dist., 2007)

In *United States v. Stevens*, 223 F.3d 239 (3d Cir. 2000), the Third Circuit declined to disturb the lower court's determination that it had the legal authority to grant a departure based on pretrial conditions affecting inmates *generally*. See also *United States v. Luna*, 2002 U.S. Dist. LEXIS 6207 (E.D.Pa. Apr. 10, 2002)

## ***Roman Catholic Diocese of Brooklyn v. Cuomo*, 2020 US LEXIS 5708 (Nov. 25, 2020, US Supreme Court)**

In ***Roman Catholic Diocese of Brooklyn v. Cuomo***, 2020 US LEXIS 5708, the Supreme Court ruled in favor of all Americans access to their Constitution rights during a pandemic, ruling that the restrictions by NY Governor Andrew Cuomo were unconstitutional. Quoted:

> "The loss of the First Amendment freedoms, for even minimal periods of time, unquestionable constitutes irreparable injury. Elrod v. Burns 427 US 347, 373 (1976)"
> ***Per Curiam*** - "…even in a pandemic, the Constitution cannot be put away and forgotten"
> ***Justice Gorsuch*** – "Government is not free to disregard the First Amendment in times of crisis" and "Even if the constitution has taken a holiday during this pandemic, it cannot become a sabbatical."

> ***Justice Kavenaugh*** – "…judicial deference in an emergency or crisis does not mean wholesale judicial abdication, especially when important questions of religious discrimination, racial discrimination, free speech, or the like are raised"

While Cuomo restricted church services for the Catholic Church and the Jewish Temples, people were freely able to continue commerce by shopping at stores and freely visiting dozens of other "*essential services*" [hardware stores, bike shops, acupuncturists, liquor stores, marijuana dispensaries, casinos, etc]. Similarly, while Federal Detainees lack family and attorney visits, commissary representatives enter the jail to keep the financial commissary machine moving. Also, guards, civilian kitchen workers and others are admitted each day with a minimal forehead temperature scan procedures. Equal Protection of the Law is required under the 14th Amendment for both churches and detainees.

Grounded in this ruling, the constitutional rights of all Americans including Federal Detainees cannot and must not get "put away and forgotten" and must be maintained during a pandemic.

## Suspension of the 6th Amendment - Speedy Trial Act

The Covid19 crisis has created an extended period of pretrial incarceration, as the 3rd Circuit Chief Judge has enabled an "Ends of Justice" continuance, which has put a freeze on the speedy trial clock, creating constitutionally excessive pretrial incarceration that go far beyond the 70 days allowed to its current span of 300+ days. See ***In re Court Operations Under the Exigent Circumstances Created by Covid-19***, 2020 U.S. Dist. LEXIS 158956. Quoted: "*Regarding the criminal matters, the Court recognizes the trial, procedural and substantive rights of criminal litigants and particularly, their right to a speedy and public trial under the Sixth Amendment (and the particular application of that right in cases involving defendants who are detained pending trial).*" However, the ruling was that public interest outweighs their constitutional rights. The current extension has been in effect since March 16, 2020. **In light of the recent Supreme Court ruling, the "sabbatical" taken by discontinuing all trials and speedy trial rights must be re-examined and relief must be provided to aggrieved parties.**

## "Punishment" not allowed for pretrial detainees

Pretrial detainees constitute a special category of prisoners. It has been generally held that pretrial detainees are entitled to the same rights as other citizens except to the extent necessary to assure their appearance at trial and the security of the institution. (*Bell v. Wolfish*, 441 U.S. 520 (1979); *Rhem v. Malcolm*, 396 F. Supp. 1195 (S.D.N.Y.), *affd*, 527 F.2d 1041 (2d Cir. 1975))

Although a pretrial detainee may be subject to some of the same restrictions as convicted prisoners, the restrictions become unconstitutional when they amount to punishment. (*Occhino v. United States*, 686 F.2d 1302 (8th Cir. 1982))

In order for the Eighth Amendment's prohibition to apply, a punishment must be involved. In a criminal law sense, punishment is "any fine, penalty, or confinement inflicted upon a person by the authority of the law and the judgment and sentence of a court, for some crime . . . or for his omission of a duty enjoined by law. (*Blacks Law Dictionary* (6th ed. 1990)) As applied to correctional law, a punishment consists of four elements: (1)

Action by an administrative body, (2) which constitutes the imposition of a sanction, (3) for the purpose of penalizing the affected person, and (4) as the result of the commission of an offense. Courts nationwide have suggested that **any treatment to which a prisoner is exposed is a form of punishment**, (*Landman v. Royster*, 333 F. Supp. 621, 645 (E.D. Va. 1971)), because it is an additional punishment above that imposed by the sentencing criminal court. As the result of being a punishment, it is subject to the Eighth Amendment review.

As much as the ECCF lockdown conditions are for the purpose of Covid19 prevention and are not for the purpose of "penalizing the affected person", by the totality of the circumstances, they constitute punishment and relief in some form is a fair consideration. The least of these forms of relief is the use of "jail credits", such as double or triple time credits that are currently being offered by courts nationwide.

## Lack of Access to Attorneys for Pretrial detainees

An individual accused of a crime has a fundamental right to counsel and the right to be represented by an attorney of his or her choice. This right is protected by the Fifth and Sixth Amendments and may not be unreasonably limited by jail officials. (*Sander v. Russell*, 401 F.2d 241, 247 (5th Cir. 1968); *State ex rel. McCamie v. McCoy*, 276 S.E.2d 534 (W. Va. 1981)) This right is not altered when the individual is incarcerated. Prison officials may not unreasonably prevent legal counsel from meeting with their prisoner clients as long as the attorney observes all of the rules of the institution. (*Lynott v. Henderson*, 610 F.2d 340 (5th Cir. 1980)). Nor may officials infringe upon a prisoners right to communicate with his or her attorney by placing undue restrictions on his or her visitation rights. (*Jones v. Diamond*, 594 F.2d 997 (5th Cir. 1979)) Courts have held that it is impermissible for prison officials to arbitrarily limit a pretrial detainee's right to an attorney's assistance.

For the greater part of the ECCF Covid19 containment period, attorney visits have been limited to 15 minute windows whereby the attorney can come to the jail and speak by a video call. These visits end as quickly as they start and are interrupted every few minutes with a software error. The time has recently been extended to around 20 to 30 minutes, but by no means does this allow a detainee the ability to prepare for trial as dictated by 6th Amendment Due Process law and case law. As per the ruling in ***Roman Catholic Diocese of Brooklyn v. Cuomo***, 2020 US LEXIS 5708, the same screening methods that are being used to allow access to the commercial machine of commissary, kitchen workers, guards daily access and other entrants can be used for attorney visits.

## Severe Isolation & Quarantine

The Eighth Amendment to the U.S. Constitution prohibits cruel and unusual punishments. The Supreme Court has interpreted this clause to prohibit punishments that indicate torture, unnecessary cruelty, or something inhuman and barbarous (*In re Kemmler*, 136 U.S. 436 (1890); *Wilkerson v. Utah*, 99 U.S. 130 (1878)) and when a punishment is unnecessarily cruel in view of the purpose for which it is used. Mental cruelty from isolation lock down has been held by the Supreme Court as sufficient to be addressed by the eighty amendment.

ECCF has had to use isolation as a means of preventing the spread of Covid19. This isolation of federal detainees ranges from 20 hours per day to 24 hours per day. This isolation involves being locked in a large closet sized room, often with no clean drinking water, limited time to shower, no access to exercise. Federal courts will provide relief for deprivation of a prisoner's constitutional right to be free of cruel and unusual punishment during his or her stay in isolated confinement when the conditions of the confinement become such

that a prisoner is deprived of personal hygiene and other basic civil rights. This includes something as simple as clean drinking water or the ability to shower.

Courts have held that **when the conditions of isolated confinement are disproportionate to the offense involved or used for an improper means it thus runs afoul of the Eighth Amendment** (*Wagner v. Hanks*, 128 F.3d 1173 (7th Cir. 1997)). Clearly Federal ECCF detainees have not violated any regulations of the institution but are still receiving "punishment" via extensive periods of isolation in jail cells.

Additionally, there have been no books distributed to read, leaving detainees with nothing to do for 20+ hours per day exacerbating their extremely depressed mental states, often losing their will to be alive and having suicidal thoughts. Although ECCF has implemented these procedures due to Covid19, they effectively become "punishment" under legal definitions.

As much as this "punishment" is part of the Covid19 response, consideration for the constitutional violation is warranted.

## No Visitor Access

The ECCF Covid19 lockdown has eliminated both contact and non-contact visits. Courts have held that, for pretrial detainees, restrictions on visitor access must be justified by a compelling interest. (*Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754 (3d Cir. 1979); *Cooper v. Morin*, 49 N.Y.2d 69, 399 N.E.2d 1188, *cert. denied*, 466 U.S. 983 (1979); *Epps v. Levine*, 480 F. Supp. 50 (D. Md. 1979)).

As much as this may have been necessary to minimize the Covid19 risk, the mental strain from the loss of family connections is a clear and present consideration for relief in the form of jail time served credits. Additionally, as per the ruling in ***Roman Catholic Diocese of Brooklyn v. Cuomo***, 2020 US LEXIS 5708, the same screening methods that are being used to allow access to the commercial machine of commissary, kitchen workers, guards daily access and other entrants can be used for family visits.

## No access to Religious Services or Clergy

The First Amendment to the United States Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ... and to petition the Government for a redress of grievances."

As much as an institution is not required to provide clergy, federal jurisprudence does require **access** for clergy to visit an institution to provide religious counseling and services. In *Gittlemacker v. Prasse* 428 F.2d 1 (3d Cir. 1970), the inherent difficulty in applying First Amendment religious freedom to prisoners is pointed out: "*The requirement that a state interpose no unreasonable barriers to the free exercise of a prisoners religion cannot be equated with the suggestion that the state has an affirmative duty to provide, furnish, or supply every prisoner with a clergyman or religious services of his choice. It is one thing to provide facilities for worship and* ***the opportunity for any clergy to visit the institution***."

Throughout the ECCF Covid19 lockdown response, detainees have had no access to clergy for religious services.

In *Cooper. v. Pate*, 382 F.2d 518 (7th Cir. 1967), the court allowed prison officials to restrict the religious freedom of certain individuals where the officials showed that such free exercise had been abused at a prior time, but held that a complete ban on religious services was discrimination. No such abuse has been sustained by ECCF detainees, yet they have no access to clergy or religious services due to the Covid19 restrictions.

Congress enacted the Religious Land Use and **Institutionalized Persons Act** (RLUIPA) (42 U.S.C. 2000cc-1(a)), in response to the Supreme Courts holding in *City of Boerne v. Flores* 521 U.S. 507 (1997). The statute provides: *"No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."*

The ECCF Covid19 lockdown creates for detainees a lack of access to clergy along with no access to religious services, which creates a clear violation of the 1st Amendment. While this may be necessary for the purposes of containing the virus, relief in the form of jail credits is warranted. Additionally, as per the ruling in ***Roman Catholic Diocese of Brooklyn v. Cuomo***, 2020 US LEXIS 5708, the same screening methods that are being used to allow access to the commercial machine of commissary, kitchen workers, guards daily access and other entrants can be used for clergy visits.

## Extremely Limited Access to Medical Care

Throughout the ECCF lockdown period, medical staff has been extremely limited, including dentists, orthopedic doctors, optometry services and more. This has caused extensive issues causing deteriorating health conditions for detainees.

In *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974) the Fifth Circuit Court of Appeals reviewed the medical treatment that was available at the Mississippi State Penitentiary. With more than 1,800 prisoners, the prison administration relied upon one full-time physician, several prisoner assistants, and a substandard hospital to provide medical care. The court ruled that the services and facilities were inadequate and ordered the prison administration to *"(1) employ such additional medical personnel as necessary so that the prisons medical staff would consist of at least three full-time physicians, one of which must be a psychiatrist and another the prisons chief medical officer, two full-time dentists, two full-time trained physicians assistants, six full-time registered or licensed practical nurses, one medical records librarian, and two medical clerical personnel, and to obtain the consultant services of a radiologist and a pharmacist; (2) comply with the general standards of the American Correctional Association relating to medical services for prisoners."*

Similarly, ECCF has had extremely limited medical access throughout the Covid19 lockdown. There are thousands of medical requests at ECCF that has not been responded to in any way, due to lack of access to medical personnel. This offers additional support for relief via jail credit considerations. As per the ruling in ***Roman Catholic Diocese of Brooklyn v. Cuomo***, 2020 US LEXIS 5708, the same screening methods that are being used to allow access to the commercial machine of commissary, guards daily access and other entrants can be used for medical personnel to enter the jail.

## Conclusion

For the above stated reasons, **all** ECCF Pretrial detainees, **both sentenced and not**, must be granted across the board relief in the form of jail credits or a reduced sentence based on these said conditions consideration or some other form of relief. A ruling is required that will provide Judges a plan to adhere to when addressing this matter. This ruling should be granted for all pretrial detainees in Federal Custody at ECCF along with detainees under Federal Custody in the State of New Jersey in other facilities who are under similar conditions that have created the same violations of their constitutional rights.

## Further, we would like to request that this case be granted the following:

Upgrade to class action status on behalf of all Federal Detainees in ECCF and those Federal Detainees affected in the same way within the State of New Jersey residing at other correctional facilities.

Signed,

Creaghan A. Harry x [signature] Date: 12/30/20

Rufus Williams x [signature] Date: 12-30-20

Plaintiffs - Pro Se

**Address:**

ECCF Detainee Legal Helpdesk Team
c/o Rufus Williams (#207585661)
354 Doremus Ave.
Newark, NJ 07105

RuFus Williams (207585661)
E.C.C.I
354 Doremus Ave.
Newark, N.J. 07105







RECEIVED

JAN 11 2021

AT 8:30________M
WILLIAM T. WALSH
CLERK

"CLERK", U.S. DISTRICT COURT
MITCHELL H. COHEN U.S. COURTHOUSE
JOHN F. GERRY PLAZA
4TH & COOPER STREET, ROOM 1050
CAMDEN, N.J. 08101-2797